**FORT WORTH CONCRETE COMPANY, Petitioner,**

**v.**

**The STATE of Texas et al., Respondents.**

**No. A–10961.**

Supreme Court of Texas.

Feb. 9, 1966.

Rehearing Denied March 30, 1966.

Simon & Simon, Fort Worth, for petitioner.

Brown, Herman, Scott & Young, Richard E. Miles, Pannell, Dean, Pannell & Kerry, Fort Worth, for respondent.

SMITH, Justice.

Petitioner Fort Worth Concrete Company has appealed from a judgment of the Court of Civil Appeals, 391 S.W.2d 818, affirming an order of the County Court at Law of Tarrant County dismissing petitioner from a condemnation proceeding. We reverse the judgments of the courts below and remand the cause to the trial court with instructions.

On February 1, 1961, E. F. Abbott and E. E. Newman, as lessors, leased to Gifford-Hill Concrete Corporation, the parent company of petitioner Fort Worth Concrete Company, approximately ten acres of land in Tarrant County for a period of two years, expiring on January 31, 1963, with an option to renew for an additional two years. The lease expressly provided that the lessors did not own the buildings or improvements on the premises which were a brick veneer office building, a wash or "batch" plant, a railroad spur track, and a tin warehouse building.

During January, 1963, it was orally agreed between the lessors and the lessee that the option to renew the lease would not be exercised but that petitioner would continue in a month-to-month tenancy because the State was preparing to condemn the land. Thereafter petitioner occupied the premises from month to month and paid rent through the month of June, 1964.

On May 20, 1964, respondents, State of Texas and Tarrant County, instituted condemnation proceedings to acquire the land for highway purposes alleging that Abbott and Newman, Fort Worth Concrete Company, and several taxing authorities were owners of the property. The taxing authorities filed disclaimers as to any interest in the property sought to be condemned. There was a hearing before the special commissioners who then made an award of $15,000.00 on June 12, 1964. This award was deposited in the registry of the court by respondents on June 19, 1964, for the benefit of the petitioner and the other condemnees. On this same date the district engineer for the State, by letter to Gifford-Hill Concrete Corporation, demanded the removal by petitioner of all its improvements from the land by July 20, 1964. The award was unsatisfactory to condemnees and objections to the award and notice of appeal were filed by Abbott and Newman and by petitioner. On July 22, 1964, respondents filed a petition for writ of possession which was granted by the court and, on the same day, petitioner was ordered to remove all of its property consisting of the buildings and railroad tracks from the condemned tract of land.

Petitioner, in compliance with the order, removed all of its property except the brick

veneer office building. According to the testimony of the witness, Dobkins, at the hearing in the respondents' motion for nonsuit referred to below, it was not economically feasible to move this building because it was affixed to the land by a solid concrete slab foundation. Petitioner, in its objections to the special commissioners' award and in its amended objections, prayed for affirmative relief in the way of damages suffered by the taking of its property and for severance damages for the property removed. Apparently, condemnor destroyed the office building during construction of the highway.

On December 4, 1964, respondents moved to take a nonsuit as to petitioner, alleging that petitioner at no time during the pendency of the suit owned any interest in the land sought to be condemned and that petitioner had been given adequate notice to remove its "personal" property from the land. On December 11, 1964, this motion, after a hearing, was granted, and petitioner was dismissed over its objection from the suit. Thereafter, it was not allowed to participate in the trial. Abbott and Newman and respondents proceeded to a jury trial. The single issue submitted was the reasonable market value of the 9.889-acre tract of land on June 19, 1964, exclusive of all improvements and subject to the month-to-month lease of petitioner. The jury answered $35,000.00, and on the basis of this finding, judgment was awarded to Abbott and Newman for $35,000.00 plus interest. The court ordered that the judgment was to be partially satisfied by payment to Abbott and Newman of the $15,000.00 on deposit in the registry of the court. Petitioner appealed from the order dismissing it from the case and from that portion of the judgment ordering the $15,000.00 deposit to be paid to Abbott and Newman. By supersedeas bond petitioner prevented Abbott and Newman from being paid the amount deposited in the registry of the court. The Court of Civil Appeals affirmed, holding that the record does not establish that the petitioner had any interest, leasehold or otherwise, in the property and that petitioner had not been prejudiced by the order of dismissal. The Court of Civil Appeals further ordered petitioner to pay 6 per cent interest on the $15,000.00 that Abbott and Newman had been deprived of during the appeal.

■ Petitioner contends, in substance, that once a condemnor institutes proceedings, gains possession of condemned property by depositing the amount of the commissioners' award in the registry of the court, applies the property to the purpose for which it was condemned, and is no longer in a position to restore the status quo, dismissal of any or all condemnees would be improper and prejudicial. We agree with this contention. In the case of Lower Nueces River Water Supply District v. Cartwright, 160 Tex. 239, 328 S.W. 2d 752 (1959) this principle was stated as follows:

"However, when the condemning authority *gains possession of land under and by virtue of condemnation proceedings* and cannot thereafter restore possession to the landowner and thus re-establish the status quo, such authority cannot dismiss the condemnation proceedings under which possession was obtained and seek to relitigate the matter of damages. Such action would result in obvious prejudice to the landowner and if permitted would allow the condemning authority to try the damage issue again and again until it received a favorable or acceptable award. This is the prejudice to the landowner upon which the rule of Brazos River Conservation & Reclamation District v. Allen, 141 Tex. 208, 171 S.W.2d 842, 844, is based." at 757.

■ It is apparent from a reading of the *Cartwright* case and the *Allen* case cited therein that the specific prejudice to the condemnee there involved the possibility that the landowner would be deprived of a favorable commissioners' award if the condemnor was allowed to dismiss the

proceeding and relitigate the issue of damages in another suit. However, the prejudice referred to in the general statement of the rule in *Cartwright* is not restricted to this particular situation but instead embraces the fundamental right to possession or payment. Once possession is taken from the condemnee he is entitled to the security of the amount of the award placed in the registry of the court.

The facts of Thompson v. Janes, 151 Tex. 495, 251 S.W.2d 953 (1952), are strikingly close to the facts of the case before us. In the *Janes* case, the condemnor had taken possession of four acres of land by agreement with the condemnees after filing condemnation proceedings against them as owners of the land. Then, after a commissioners' award, which was deposited with the court, a county court trial, an appeal to the Court of Civil Appeals, and a remand for a new trial, the condemnor sought to dismiss part of the land from the suit on the ground that he had ascertained that the condemnees did not own that part of the land. In upholding the county court's refusal to allow condemnor to file his trial amendments and supplemental petition, this Court said that to do so would result in the condemnees neither having possession of the land which they had relinquished to the condemnor nor compensation therefor.

 The fact that any or all of the parties to the condemnation are dissatisfied with the award at the time of the nonsuit or dismissal does not alone determine the prejudicial nature of such action. To deprive a condemnee of his right to possession without guaranteeing payment for the value of that right is prejudicial in itself. That guarantee is provided by compliance with Article 3268, Vernon's Annotated Civil Statutes, requiring the condemnor if it should desire to enter upon and take possession of the property, to pay the condemnee the amount of the damages awarded by the commissioners or to deposit an equal amount in the registry of the Court. Once

an award is made and the amount thereof is placed in the registry of the court *to the order of the condemnees,* and the land is occupied by the condemning authority, the interest of each condemnee is established in and attaches to that fund as security for any possible damage suffered by reason of his dispossession. While we concede that the State of Texas and Tarrant County are entities with high credit ratings, the protection and guarantee for the condemnee is statutory, and those statutes are to be strictly complied with where prejudice might otherwise result. Furthermore, the County Court had no authority to award any portion of the deposit to Abbott and Newman to the exclusion of petitioner until there had been a final determination of petitioner's compensable interest and damage, if any. However, this does not necessarily mean that there is or will be a question of title in this case.

The judgments of the Court of Civil Appeals and the County Court are reversed and the cause is remanded to the County Court with instructions to set aside the order dismissing petitioner and to proceed to a new trial.